Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| LUIS M. LEBRÓN CRUZ<br><br>Recurrido<br><br>V.<br><br>AMGEN MANUFACTURING LIMITED<br><br>Peticionaria | KLCE202400135 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2021CV00193<br><br>Sobre: Discrimen por Edad (Ley 100); Discrimen por Impedimento (Ley 44); Despido Injustificado (Ley 80); Procedimiento Sumario (Ley 80) |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2024.

El 1 de febrero de 2024 compareció ante nos Amgen Manufacturing Limited (en adelante, AML o peticionaria), por medio de una *Petición de Certiorari*. Mediante esta, nos solicita que revisemos la *Resolución* emitida el 19 de enero de 2024 y notificada el 22 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Humacao. En virtud del referido dictamen, el foro de instancia declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por AML.

Por los fundamentos que adelante se esbozan, se expide el *certiorari* y se *revoca* la *Resolución* recurrida.

## I

Los eventos fácticos y procesales que dan lugar al recurso que nos ocupa son los que en adelante se esbozan. El 26 de febrero de 2021, el señor Luis M. Lebrón Cruz (en adelante, señor Lebrón Cruz

Número Identificador

SEN2024 _____

o recurrido), presentó una *Querella* sobre despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA § 185 *et seq.*[1], discrimen por razón de edad, de conformidad a la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA § 146 *et seq.*[2], y discrimen por razón de impedimento, bajo la Ley Núm. 44 de 2 de julio de 1985, 1 LPRA § 501 *et seq.*[3]

En la mencionada *Querella*, el recurrido afirmó que trabajó para la farmacéutica AML desde agosto de 2001 hasta el 2 de marzo de 2020, cuando fue despedido.[4] Narró que, contrario a sus compañeros, mantenía un turno de trabajo fijo, ello por recomendación médica, toda vez que, padecía de depresión mayor.[5] A esos efectos, su turno de trabajo se extendía desde las 5:00 de la tarde, hasta las 5:30 de la mañana del siguiente día. Alegó que, previo a su despido, se le informó durante una reunión, que todos los empleados debían comenzar a tener turnos rotativos. No obstante, por su condición de salud, solicitó a su supervisora, la señora Nitza Osorio, mantener el mismo horario de trabajo. La señora Nitza Osorio le indicó que, debía realizar una solicitud al Departamento de Recursos Humanos.

Con motivo de ello, el recurrido indicó haberse reunido con una representante del mencionado departamento, la señora Maricaty Vargas, para solicitar formalmente el acomodo razonable necesario para retener su turno de trabajo fijo. Sin embargo, manifestó que, la señora Maricaty Vargas le indicó que ello no era posible. El recurrido arguyó que, aun así, insistió en ello y, mientras,

---

[1] Ley sobre Despidos Injustificados, según enmendada.
[2] Ley Antidiscrimen de Puerto Rico, según enmendada.
[3] Ley para Prohibir el Discrimen contra las Personas con Impedimentos Físicos, Mentales o Sensoriales, según enmendada.
[4] Apéndice del recurso de *certiorari*, págs. 1-10.
[5] El recurrido especificó que, ingería un medicamento durante la mañana que le provocaba sueño, y su psiquiatra le recomendó continuar consumiendo el mismo en igual horario.

continuó laborando en el turno de 5:00 de la tarde a 5:30 de la mañana.[6]

Por otro lado, el señor Lebrón Cruz reseñó un incidente relacionado a unas alarmas, ocurrido durante su turno de trabajo, que comenzó el 9 de noviembre de 2019, a las 5:00 de la tarde, y culminó el 10 de noviembre de 2019, a las 5:30 de la mañana. Arguyó que, tres (3) meses luego de dicho incidente, y tras una investigación realizada por el Departamento de Recursos Humanos, fue despedido, por alegadamente haber provisto información diferente a la suministrada por sus compañeros de trabajo, aun cuando su conocimiento estaba basado en lo que le informaron sus compañeros de trabajo. Añadió que, fue sustituido por empleados de menor edad y con menor experiencia, y que "nunca fue objeto de amonestaciones por violaciones a las normas de la empresa, así como tampoco por motivos de ineficiencia en su desempeño".[7]

A tenor con todo lo anterior, el señor Lebrón Cruz sostuvo que, lo que verdaderamente motivó su despido fue su edad y su condición de depresión mayor. Así pues, alegó que AML discriminó en su contra y violentó las disposiciones de la Ley Núm. 100 de 30 de junio de 1959, *supra*, y la Ley Núm. 44 de 2 de julio de 1985, *supra*.

En cuanto a la causa de acción de discrimen por edad, el recurrido expresó haber sufrido daños económicos por la pérdida de su salario, los cuales ascendían a no menos de $4,142.67 mensuales. Adujo también, que, sufrió angustias mentales y daños emocionales, estimados en no menos de $200,000.00. En adición, sostuvo que, a la indemnización por los daños económicos y emocionales, le aplicaba la doble penalidad dispuesta por la Ley Núm. 100 de 30 de junio de 1959, *supra*. Reclamó, además, una

---

[6] Surge del expediente que, la solicitud de acomodo razonable del señor Lebrón Cruz fue aprobada el 19 de diciembre de 2019, y notificada el 14 de enero de 2020. Véase, apéndice del recurso de *certiorari*, pág. 355.
[7] Apéndice del recurso de *certiorari*, pág. 1.

suma equivalente a la pérdida de ingresos y de sus beneficios como empleado, estimada en no menos de $49,712.00, la cual continuaría aumentado a razón de $956.00 mensuales, hasta que se le reinstalara en el empleo.

Con respecto a la causa de acción de discrimen por impedimento, el señor Lebrón Cruz igualmente reclamó una suma no menor de $200,000.00 en concepto de daños emocionales y angustias mentales. Asimismo, expresó que, a dicha suma le aplicaba la doble penalidad según estipulada por la Ley Núm. 100 de 30 de junio de 1959, *supra*.

Por otro lado, el señor Lebrón Cruz expresó que, de no proceder las causas de acción por discrimen, contaba con los remedios provistos por la Ley Núm. 80 de 30 de mayo de 1976, *supra*. En lo específico, alegó que tenía derecho a recibir el sueldo correspondiente a seis meses de trabajo en concepto de indemnización ($24,856.00), en adición a una indemnización progresiva, equivalente al sueldo de tres semanas, multiplicado por los años completos de servicio (18), lo que equivaldría a $51,624.00, para un total de $76,480.00.

En suma, el recurrido solicitó el pago de las cuantías esbozadas en los párrafos que anteceden, la imposición del interés legal, al tipo máximo dispuesto por ley, las costas y los honorarios de abogado.

El 30 de marzo de 2021, AML presentó su *Contestación a Querella*, en la cual negó la mayoría de las alegaciones y adujo que, el despido del recurrido fue con justa causa.[8] AML indicó que, la edad del señor Lebrón Cruz no fue un factor en ninguna de las decisiones tomadas y, que no discriminó en contra de este por

---

[8] *Íd.*, págs. 11-20.

padecer de condición alguna. Como parte de sus defensas afirmativas, AML indicó lo siguiente:

[. . .]

7. El Querellante fue despedido con justa causa. El Querellante tenía un patrón de desempeño pobre y negligente, según evidenciado por sus evaluaciones anuales. Al Querellante se le había advertido sobre estar distraído durante su rol de monitoreo incluyendo el uso de celular, el cual afecta su desempeño. Además, el Querellante incurrió en varias faltas serias con el efecto o potencial efecto de afectar las operaciones de la empresa. Por ejemplo, en el 2019, el Querellante estuvo envuelto en varios incidentes de no reportar eventos significativos durante su turno de trabajo, no manejar situaciones con el conocimiento esperado para su posición, y no seguir los procesos establecidos para manejar situaciones. Este patrón continuó en el 2020. Al Querellante también se le había orientado sobre su conducta en el lugar de empleo y éste había expresado que no sabía si podía controlar su agresividad contra un compañero de trabajo. El Querellante también estuvo envuelto en un incidente en el que no siguió el procedimiento estándar (SOP) establecido para reportar una alarma durante su turno de noche. El asunto fue investigado por Walter Cruz y el Querellante y otro trabajador externo envuelto en el incidente proveyeron versiones inconsistentes de lo que sucedió. Por lo tanto, el asunto fue referido a *Staff Relations* para una investigación. *Staff Relations* llevó a cabo la investigación y concluyó que el Querellante mintió tanto al *System Owner* como durante la investigación de *Staff Relations*. Mentir es una ofensa seria que constituye deshonestidad y, de por sí, es suficiente para el despido inmediato. En este caso, el Querellante no solamente mintió durante una investigación pero también falló en seguir los procesos requeridos que conocía. También tenía otros problemas de desempeño y conducta sobre los cuales había sido asesorado y advertido de la necesidad de mejorar. Bajo estas circunstancias, el despido del Querellante fue justificado.

[. . .].[9]

Tras múltiples trámites procesales, innecesarios pormenorizar para atender el presente recurso, el 28 de septiembre de 2023, AML presentó *Moción de Sentencia Sumaria*.[10] A través de esta, propuso cincuenta y dos hechos que, a su juicio, no estaban

---

[9] *Íd.*, págs. 17-18.
[10] *Íd.*, págs. 21-51.

en controversia. Asimismo, alegó que, dichos hechos demostraban que el despido del señor Lebrón Cruz no fue arbitrario ni caprichoso, sino que AML tenía justa causa para ello. Agregó que, el recurrido no contaba con evidencia para demostrar que los factores de la edad y sus condiciones de salud fueron considerados al momento de tomar la decisión de despedirlo. Concluyó indicando que, las reclamaciones debían ser desestimadas en su totalidad.

Es menester señalar que, para fundamentar su solicitud de sentencia sumaria, AML anejó varios documentos, entre los cuales se incluían tres declaraciones juradas, respectivamente suscritas por: (i) Maritza Mercado, (ii) Maricaty Vargas y (iii) Nitza Osorio, empleadas de AML al momento de los hechos.[11]

Luego de varias solicitudes de prórroga, el 11 de diciembre de 2023, el señor Lebrón Cruz se opuso mediante *Oposición a Moción de Sentencia Sumaria.*[12] Tras oponerse a todos los hechos que entendía controvertidos, el recurrido sostuvo que, la declaración jurada de la señora Maricaty Vargas "no cumplió con el requisito mínimo de proveer las bases para demostrar que tiene conocimiento personal sobre lo que declara".[13] Precisó que, en múltiples ocasiones, la declaración resultaba en prueba de referencia, lo que convertía a la misma en inadmisible para sustentar la solicitud de sentencia sumaria.[14]

Posteriormente, el 14 de diciembre de 2023, la peticionaria instó *Moción sobre Necesidad de Presentar una Réplica a la Oposición a la Moción de Sentencia Sumaria y Solicitando Término para ello.*[15] No obstante, la misma fue denegada por el foro de instancia, el 15 de diciembre de 2023.[16]

---

[11] Véase Apéndice del recurso de *certiorari*, págs. 52-130, 404-696 y 697-704, respectivamente.
[12] *Íd.*, págs. 705-757.
[13] *Íd.*, pág. 749.
[14] *Íd.*
[15] *Íd.*, págs. 788-790.
[16] *Íd.*, págs. 791-792.

El 19 de enero de 2024, y notificada el 22 de enero de 2024, el Tribunal de Primera Instancia emitió *Resolución*, declarando No Ha Lugar la solicitud de sentencia sumaria, acogiendo el planteamiento del recurrido y determinando que, no se cumplía con la Regla 36.5 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5.[17] En lo específico, el foro primario dispuso lo siguiente:

> Evaluada toda la documentación del Expediente Judicial, así como las mociones presentadas, este Tribunal está en posición de resolver y declara NO HA LUGAR la petición de la Parte Demandada (AML) de que se dicte Sentencia Sumaria a su favor.
>
> La Parte Demandada (AML) incumplió con la Regla 36.5 de Procedimiento Civil que requiere que las declaraciones juradas (para sostener su moción de sentencia dictada sumariamente) estén basadas en el conocimiento personal del o de la declarante. Por tanto, se declara No Ha Lugar la petición de la Parte Demandada (Amgen Manufacturing Limited) de Sentencia Sumaria. (Énfasis en el original omitido).[18]

Precisa señalar que, mediante el referido dictamen, el tribunal *a quo* consignó un total de cuarenta y tres (43) determinaciones de hechos, mas, **no hizo constar los hechos que se mantenían en controversia**.

Inconforme con el dictamen, el 1 de febrero de 2024, acudió ante nos AML mediante el recurso que nos ocupa, y realizó los siguientes señalamientos de error:

> A. Erró el TPI al concluir que las declaraciones con las que AML apoyó la relación de hechos incontrovertidos que contiene su *MSS* incumplen con la Regla 36.5 de Procedimiento Civil.
>
> B. Erró el TPI al no reconocer que tales declaraciones no caen bajo la definición de prueba de referencia.
>
> C. Erró el TPI al no reconocer que aun si el expediente de investigación levantado por Maricaty Vargas como parte de su investigación, y que se anejó y autenticó vía declaración jurada, fuera prueba de referencia, *que no lo es*, éste constituye un *récord de negocio* bajo la excepción a la *Regla de Exclusión de Prueba de Referencia* y, por tanto, es admisible en evidencia.

---

[17] *Íd.*, págs. 793-804.
[18] *Íd.*, pág. 804.

D. Erró el TPI al dejar de adoptar como determinaciones de hechos los hechos incontrovertidos 1, 8, 22, 23, 31-35, 37 (La parte inicial de la primera oración del hecho), 42, 45-48 y 52 contenidos en la *MSS*.

E. Erró el TPI al denegar la *MSS* de AML y no desestimar el pleito con perjuicio.

Mediante *Resolución* emitida el 2 de febrero de 2024, concedimos a la parte recurrida hasta el martes, 20 de febrero de 2024, para expresarse en cuanto al recurso. En dicha fecha, compareció el señor Lebrón Cruz mediante *Moción de Desestimación por Falta de Jurisdicción*.[19] El 28 de febrero de 2024, dictamos *Resolución* declarando NO HA LUGAR la moción dispositiva, y concedimos un término final hasta el 18 de marzo de 2024, para que el señor Lebrón Cruz presentara su posición en torno al recurso de *certiorari*. Tras una prórroga solicitada, concedimos al recurrido un término final e improrrogable hasta el 2 de abril de 2024. En cumplimiento con lo ordenado, el 2 de abril de 2024 compareció el señor Lebrón Cruz mediante *Oposición a Expedición al Auto de Certiorari*.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver el recurso ante nuestra consideración.

**II**

### A. Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917

---

[19] Hacemos constar que, el 23 de febrero de 2024, AML presentó *Oposición a Moción de Desestimación por Falta de Jurisdicción*. No obstante, el 28 de febrero de 2024, solicitó que la misma se tuviese por no puesta, de conformidad con la Regla 47 del Reglamento del Tribunal de Apelaciones.

(2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no

ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, *supra,* dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una **resolución** u **orden** bajo las **Reglas 56 y 57** o de la **denegatoria de una moción de carácter dispositivo**. No obstante, y por **excepción** a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar **órdenes** o **resoluciones interlocutorias** dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la **admisibilidad de testigos de hechos o peritos esenciales**, asuntos relativos a **privilegios evidenciarios**, **anotaciones de rebeldía**, en casos de **relaciones de familia**, en casos que revistan **interés público** o en cualquier otra situación en la cual esperar a la apelación constituiría un **fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y

rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Sentencia Sumaria

Como es sabido, en nuestro ordenamiento jurídico, el mecanismo de la sentencia sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015). La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio. *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023); *González Meléndez v. Mun. San Juan*, 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).[20] Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Velázquez Ortiz v. Gobierno Mun. De Humacao*, 197 DPR 656, 662 (2017); *Lugo Montalvo v. Sol Meliá Vacation*, supra, pág. 225. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el

---

[20] Véase también, *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021).

resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980; *Ramos Pérez v. Univisión*, supra. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales. *González Meléndez v. Mun. San Juan*, supra; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 979; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 334-335; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018); *Velázquez Ortiz v. Gobierno Mun. De Humacao*, supra, págs. 662-663.

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019); *Rodríguez García v. UCA*, 200 DPR 929, 940-941 (2018).

Cumplidos dichos requisitos, procede dictar sentencia sumaria si, las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible,

acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si el derecho aplicable así lo justifica. 32 LPRA Ap. V, R. 36.3(e); *Birriel Colón v. Econo y Otros*, supra; *González Meléndez v. Mun. San Juan*, supra, págs. 610-611; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Por otro lado, la parte que se opone tiene el deber de hacer referencia a los párrafos enumerados por la parte promovente que entiende que están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. 32 LPRA Ap. V, R. 36.3, *supra*; *Roldán Flores v. M. Cuebas, Inc.*, supra, págs. 676-677; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432. Es decir, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Birriel Colón v. Econo y Otros*, supra; *Roldán Flores v. M. Cuebas, Inc.*, supra. Las meras afirmaciones no bastan. *Ramos Pérez v. Univisión*, supra, págs. 215-216. "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos, que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida); *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *SLG Fernández-Bernal v. RAD-MAN*, supra, págs. 335-336.

Por otro lado, y en lo pertinente al caso de marras, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5, establece que las declaraciones juradas para sostener u oponerse a la moción de sentencia sumaria deberán estar basadas en el conocimiento personal del declarante y no en prueba de referencia. Es decir, habrán de contener hechos que serían admisibles en evidencia.[21] Dicha Regla lee como sigue:

> Las declaraciones juradas para sostener u oponerse a la moción se basarán en el **conocimiento personal** del o de la declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el o la declarante está cualificado para testificar en cuanto a su contenido. Copias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia a una declaración jurada, deberán unirse a la misma o notificarse junto con ésta. El tribunal podrá permitir que las declaraciones juradas se complementen o se impugnen mediante deposiciones o declaraciones juradas adicionales. (Énfasis suplido.)

Al interpretar la referida Regla, el Tribunal Supremo de Puerto Rico ha resuelto que "las declaraciones juradas que contienen sólo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye". *Roldán Flores v. M. Cuebas, Inc.*, supra. De modo que, para que una declaración jurada sea suficiente, este debe contener, no solo hechos sobre los aspectos sustantivos del caso, sino también, hechos que establezcan que la persona declarante tiene conocimiento personal de lo declarado. *Roldán Flores v. M. Cuebas*, supra, pág. 678.

Al momento de revisar denegatorias o concesiones de una sentencia sumaria, los foros revisores nos encontramos en la misma posición del Tribunal de Primera Instancia, y debemos utilizar sus mismos criterios para evaluarlas. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *González Meléndez v. Mun. San Juan,* supra,

---

[21] Véase, *Corp. Presiding Bishop v. Purcell*, 117 DPR 714 (1986)

pág. 611; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 981. Nuestro Máximo Foro ha sido claro en que, "[l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra; *Segarra Rivera v. Int'l Shipping et al.*, supra.

De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Birriel Colón v. Econo y Otros*, supra; *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020).

Finalmente, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, establece que cuando en virtud de una moción se dicta una sentencia que no dispone de la totalidad del pleito, o cuando se deniega el remedio solicitado, el Tribunal tendrá la obligación de resolver formulando una determinación de los hechos controvertidos e incontrovertidos que sean esenciales y pertinentes. La mencionada Regla dispone:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos**, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
>
> A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno. (Énfasis nuestro.)

En atención a la citada Regla, nuestro Tribunal Supremo ha enfatizado que ante una moción de sentencia sumaria, los tribunales tienen el deber de establecer los hechos incontrovertibles y los que sí lo están. Tales determinaciones de hechos controvertidos e incontrovertidos facilitan el desfile de prueba, pues los hechos incontrovertidos se dan por probados. Asimismo, colocan a los tribunales apelativos en posición de ejercer su facultad revisora. En *Ramos Pérez v. Univisión*, supra, pág. 221, interpretando nuestro cuerpo de Reglas de Procedimiento Civil, el Tribunal Supremo de Puerto Rico, expresó:

> [A]unque se deniegue la moción, el tribunal deberá establecer los hechos que resultaron incontrovertibles y aquellos que sí lo están. Regla 36.4 de Procedimiento Civil, *supra.* Para ello, podrán utilizar la enumeración que las partes le presentaron. Incluso, la Regla 36.3(b)(3) de Procedimiento Civil, *supra,* requiere que la parte promovida enumere los hechos que a su juicio no están en controversia. Además, los hechos debidamente enumerados e identificados con referencia a la prueba documental admisible presentados en el caso se darán por admitidos si no son debidamente controvertidos. Regla 36.3(d), *supra.* Todo esto simplificará el desfile de prueba en el juicio, ya que los hechos incontrovertidos se considerarán probados.

### C. *Prueba de Referencia*

La Regla 801 (c) de Evidencia, 32 LPRA Ap. VI, R. 801 (c), define la prueba de referencia como aquella declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. *Pueblo v. Zeno Torres*, 211 DPR 1, 17 (2022); *Nieves López v. Rexach Bonet*, 124 DPR 427, 433 (1989).

Como regla general, la prueba de referencia es inadmisible como evidencia. Esta regla de exclusión está fundada primordialmente en la ausencia de garantías circunstanciales de confiabilidad y exactitud, y en el hecho de que la persona que hace la aseveración no está disponible para ser contrainterrogada. *P.N.P.*

*v. Rodríguez Estrada, Pres. C.E.E.*, 123 DPR 1, 34 (1988).[22] Sin embargo, las Reglas de Evidencia disponen de circunstancias en las cuales la prueba de referencia podrá ser admisible. Estas son: (a) declaraciones contemporáneas a la percepción; (b) declaraciones espontáneas por excitación; (c) condición mental, física o emocional; (d) declaraciones para fines de diagnóstico o tratamiento médico; (e) escrito de pasada memoria; (f) récords de actividades que se realizan con regularidad; (g) ausencia de entradas en los récords que se lleven conforme a las disposiciones del inciso (f); (h) récords e informes públicos; (i) récord de estadística vital; (j) ausencia de récord público; (k) récords de organizaciones religiosas; (l) certificados de matrimonio, bautismo y otros similares; (m) récords de familia; (n) récords oficiales sobre propiedad; (o) declaraciones en documentos que afecten intereses en propiedad; (p) declaraciones en documentos antiguos; (q) listas comerciales y otras similares; (r) tratados; (s) reputación sobre historial personal o familiar; (t) reputación sobre colindancias o historial general; (u) reputación sobre carácter y, (v) sentencia por condena previa. 32 LPRA Ap. VI, R. 805.

**III**

Por estar intrínsecamente relacionados, discutiremos los **errores A**, **B**, y **C** de manera conjunta.

En esencia, nos corresponde determinar si, las declaraciones juradas presentadas por AML para sustentar su *Moción de Sentencia Sumaria* constituyen prueba de referencia. AML asegura que, las referidas declaraciones se ofrecieron para establecer el rol de cada uno de sus declarantes, y sustentar la razón de sus conclusiones y determinaciones, tras el proceso de investigación llevado a cabo.

---

[22] Véase también, *Pueblo v. Zeno Torres*, supra, pág. 17.

Sostiene además, que, las mismas se basan en el conocimiento propio y personal de cada una de las declarantes.

Tras un examen minucioso de las declaraciones juradas en cuestión, razonamos que le asiste la razón a AML. Veamos.

Mediante su declaración jurada[23], la señora Maritza Mercado, *Staff Relations Senior Manager* del Departamento de Recursos Humanos de AML, declaró que, como consecuencia de su posición, es la encargada de custodiar los *expedientes de personal* de los empleados activos e inactivos de AML, incluyendo el del aquí recurrido.[24] En virtud de ello, declaró que, el señor Lebrón Cruz recibió adiestramientos sobre el *Código de Conducta Corporativo de Amgen*, así como adiestramientos sobre el procedimiento a seguir en instancias en las que se activara una alarma durante su turno de trabajo.[25] Junto a su declaración, la señora Maritza Mercado anejó, entre otros, el código de conducta al que hizo referencia, y el reporte de los adiestramientos tomados por el señor Lebrón Cruz.[26]

De otro lado, la señora Maricaty Vargas, *Staff Relations Manager* del Departamento de Recursos Humanos de AML al momento de los hechos, declaró que, conocía las políticas de empleo y los códigos de conducta y valores de AML, toda vez que, como parte de sus responsabilidades diarias en su empleo, debía asegurarse del cumplimiento de estos.[27] Declaró que, entre sus funciones, se encontraban las siguientes: "investigar incidentes de posibles violaciones a políticas de AML, sus *Valores*, y/o *Código de Conducta*, entrevistar empleados y analizar documentos provistos como parte de los procesos de investigación, asistir en procesos de manejo de desempeño y conducta de empleados, analizar solicitudes de acomodo razonable y trabajar en el proceso interactivo de estas

---

[23] Apéndice del recurso de *certiorari*, págs. 52-130.
[24] *Íd.*, pág. 52.
[25] *Íd.*, págs. 53 y 55.
[26] *Íd.*, págs. 56-101 y 127-130, respectivamente.
[27] *Íd.*, pág. 404.

solicitudes, y recomendar a los gerentes las acciones disciplinarias apropiadas a tomar, según las circunstancias de cada caso".[28]

En adición, la señora Maricaty Vargas declaró sobre la investigación que le fue asignada y que culminó con el despido del señor Lebrón Cruz. En detalle, expuso todas las notas que tomó en cada una de las entrevistas realizadas, tanto al recurrido, como a los demás empleados involucrados en el suceso.[29] A tenor con la información obtenida, la señora Maricaty Vargas declaró sobre la conclusión a la cual llegó y la recomendación ofrecida, a saber, el despido del señor Lebrón Cruz.[30]

Para sostener su declaración jurada, la señora Maricaty Vargas adjuntó una serie de documentos relacionados a la investigación.[31] Cabe señalar que, esta declaró tener conocimiento personal de dichos documentos, debido a que fue ella quien preparó y compiló los mismos.[32]

Finalmente, la declarante Nitza Osorio, *Gerente de Mantenimiento* de AML al momento de los hechos, y supervisora para ese entonces, del señor Lebrón Cruz, en esencia, arguyó que, acogió la recomendación de la señora Maricaty Vargas y posteriormente, le notificó el despido al señor Lebrón Cruz.[33] Declaró que, al momento de acoger la misma, no tomó en consideración la edad, ni la condición de salud del recurrido, así como tampoco el que se le hubiese concedido un acomodo razonable.[34] Añadió que, sobre cuatro (4) meses luego del despido del recurrido, se reclutó a una persona para ocupar la vacante que surgió con el despido del señor

---

[28] *Íd.*, pág. 405.
[29] *Íd.*, págs. 406-410.
[30] *Íd.*, pág. 410.
[31] *Íd.*, págs. 412-696.
[32] *Íd.*, pág. 404.
[33] *Íd.*, pág. 698.
[34] *Íd.*, pág. 698.

Lebrón Cruz y, que la edad del candidato no fue un criterio que tomó en consideración al momento en que seleccionó al mismo.[35]

De conformidad al derecho expuesto, las declaraciones juradas que se presenten en apoyo a una solicitud de sentencia sumaria deben contener no solo hechos sobre los aspectos sustantivos del caso, sino también aquellos hechos que establezcan que la persona declarante tiene conocimiento personal del asunto declarado.[36]

De las declaraciones juradas antes reseñadas, se desprende sin más, que, **las declarantes precisaron asuntos que le constaban de propio y personal conocimiento**, dado que los mismos surgieron **como parte de procesos relacionados directamente con sus labores en la farmacéutica AML**. Nótese que, la declaración jurada de la señora Maritza Mercado se sustenta en lo que ella pudo constatar de los documentos que, como parte de sus labores en AML, custodia. Por su parte, la declaración jurada de la señora Maricaty Vargas versa sobre la investigación que ella misma llevó a cabo tras el incidente ocurrido durante el turno de trabajo del señor Lebrón Cruz. Mientras, la declaración jurada de la señora Nitza Osorio expone hechos que ella misma llevó a cabo.

No apreciamos que lo antes reseñado constituya, en modo alguno, prueba de referencia. Además, coincidimos con la postura de la peticionaria, en cuanto a que, aun si la declaración jurada de la señora Maricaty Vargas constituyese prueba de referencia, lo cual negamos, esta se consideraría como una excepción a la regla de exclusión de prueba de referencia, bajo la modalidad de *récord de actividades que se realizan con regularidad*.[37] No obstante, reiteramos que, no observamos prueba de referencia en las

---

[35] *Íd.*, págs. 698-699.
[36] *Roldán Flores v. M. Cuebas,* supra.
[37] Véase, Regla 805(f) de las de Evidencia. 32 LPRA Ap. VI, R. 805(f).

declaraciones juradas presentadas por AML en apoyo a su solicitud de sentencia sumaria. Se trata de declaraciones de hechos que les constaban de propio y personal conocimiento a las declarantes, por ser asuntos estrictamente atados a sus labores como parte de su empleo en la farmacéutica AML. Razonamos que, las aludidas declaraciones juradas son admisibles en evidencia.

Habida cuenta de lo anterior, resolvemos que los errores A, B y C se cometieron.

Superado este análisis, procedemos a atender los **errores D** y **E**, los cuales, por estar intrínsecamente relacionados, atenderemos en conjunto. En virtud de estos, AML arguye que, el foro de instancia incidió al no adoptar una serie de determinaciones de hechos en su dictamen, así como al declarar No Ha Lugar su *Moción de Sentencia Sumaria*. A grandes rasgos, aduce que, el foro de instancia no incorporó varios hechos incontrovertidos que surgían de la solicitud de sentencia sumaria, por alegadamente estar basados en las declaraciones juradas que determinó inadmisibles, más sí adoptó los restantes hechos incontrovertidos como determinaciones de hechos, los cuales se apoyaban en las mismas declaraciones juradas en cuestión; resultando así en una clara contradicción. Además, alega que no existen hechos materiales en controversia. Coincidimos con tal apreciación.

Como es sabido, al revisar una determinación sobre una sentencia sumaria, este foro apelativo está obligado a examinar *de novo* todos los documentos incluidos en el expediente.[38] Luego de una minuciosa revisión *de novo*, acogemos las determinaciones de hechos consignadas por el foro de instancia en su *Resolución* emitida el 19 de enero de 2024[39], y se añaden como determinaciones

---

[38] *Birriel Colón v. Econo y Otros*, supra; *Rosado Reyes v. Global Healthcare*, supra.
[39] Apéndice del recurso de *certiorari*, págs. 794-799.

de hechos, los hechos incontrovertidos 1, 8, 22, 23, 31-35, 37, 42, 45-48 y 52, conforme surgen de la *Moción de Sentencia Sumaria*.[40]

Por otro lado, es sabido también, que, cuando el tribunal de instancia deniega una solicitud de sentencia sumaria, este viene obligado a consignar en su dictamen tanto los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, como los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos.[41]

Al revisar el dictamen emitido por el tribunal *a quo* en el presente caso, se desprende que dicho foro no consignó los hechos materiales controvertidos, conforme exige la Regla 36.4 de las de Procedimiento Civil, *supra*. No obstante, luego de realizada una ponderada revisión *de novo*, colegimos que en el presente caso **no** existen hechos en controversia que impidan la disposición sumaria del caso, tal cual fue solicitada por la parte peticionaria. En resumen, colegimos que de acuerdo a la evidencia que obra en autos, se desprende con meridiana claridad que el despido del señor Lebrón Cruz fue uno justificado.

**IV**

Por los fundamentos expuestos, se expide el recurso de *certiorari* y se *revoca* la *Resolución* recurrida. A tenor, se declara Ha Lugar la petición de sentencia sumaria. Consecuentemente, se desestima la *Querella* presentada por el señor Lebrón Cruz.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[40] *Íd.*, págs. 24-36.
[41] 32 LPRA Ap. V, R. 36.4; *Ramos Pérez v. Univisión,* supra.